# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 16-922V

| | |
|---|---|
| \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* | \* |
| | \* |
| | \* |
| L.R., by and through his parent and natural | \* **UNPUBLISHED** |
| guardian, MICHELLE BAXTER, | \* |
| | \* |
| Petitioner, | \* |
| | \* Special Master Katherine E. Oler |
| | \* |
| v. | \* Filed: February 14, 2023 |
| | \* |
| SECRETARY OF HEALTH AND | \* Interim Attorneys' Fees and Costs |
| HUMAN SERVICES, | \* |
| | \* |
| Respondent. | \* |
| | \* |
| \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* | |

*Maximillian J. Muller*, Muller Brazil, LLP, Dresher, PA, for Petitioner
*Madelyn Weeks*, U.S. Department of Justice, Washington, DC, for Respondent

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On August 2, 2016, L.R., by and through his parent and natural guardian, Michelle Baxter ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Pet., ECF No. 1. Petitioner alleges that L.R. developed Anti-NMDA encephalitis as a result of the measles, mumps, rubella ("MMR"); diphtheria, tetanus, and pertussis ("DTaP"); hepatitis B; polio; and varicella vaccines he received on August 4, 2014. Pet. at 1.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

Petitioner filed a Motion for Interim Attorneys' Fees and Costs on August 12, 2022, requesting a total of $120,288.15. ECF No. 74 ("Fees App.") at 1-2. Respondent filed a response on August 26, 2022, deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs. ECF No. 75 ("Fees Resp.") at 2.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$117,958.15** in interim attorneys' fees and costs.

## I.     Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375.  *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

2

### B.  Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C.  Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable

basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.*, 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.   Discussion

### A.   Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). First, Petitioner's attorneys have been working on Petitioner's case since November 2015. Fees App. Ex. A at 6. Second, Petitioner has retained an expert at substantial cost. Fees App. Ex. B at 34 (showing that Dr. Steinman has billed $31,625.00 in this case). I held an entitlement hearing in this matter in January 2022. Petitioner has not made any payments toward attorneys' fees or costs. Fees App at 2. The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008).

I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health & Hum. Servs*, No. 14-853V, 2020 WL 4219821 *5 (Fed. Cl. Spec. Mstr. Jun. 30, 2020)

4

(recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees).

Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioner and her counsel would suffer undue hardship in the absence of an award of interim attorneys' fees and costs.

### B. Good Faith and Reasonable Basis

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. at 2-3. I find that the petition was filed in good faith.

With regard to reasonable basis, Petitioner submitted three expert reports from Lawrence Steinman, MD, who is board certified in neurology. Ex. 11 at 2. Dr. Steinman has theorized that the vaccines that L.R. received caused L.R.'s encephalitis by means of molecular mimicry. *Id*. at 5. Dr. Steinman theorized that components of the MMR and varicella vaccines bear sufficient similarity to self antigens in the NMDA receptor to cause an autoimmune reaction. *Id*. The autoimmune attack on the NMDA receptor results in encephalitis. *Id.* at 19. This constitutes sufficient evidence to establish a reasonable basis for the claim. As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

### C. Attorneys' Fees

Petitioner requests a total of $83,561.90 in attorneys' fees.  Fees App. at 2.

### 1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

---

[3] The 2015-2016 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/ Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.
The 2017 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%

Petitioner's counsel, Mr. Maximillian Muller, requests a rate of $255.00 per hour for work performed in 2015; $275.00 per hour for work performed in 2016; $300.00 per hour for work performed in 2017; $317.00 per hour for work performed in 2018; $325.00 per hour for work performed in 2019; $350.00 per hour for work performed in 2020; $375.00 per hour for work performed in 2021; and $400.00 per hour for work performed in 2022. Fees App. Ex. A.

Mr. Muller also requests compensation for his colleague at Muller Brazil, Ms. Amy Senerth: $225.00 per hour for work performed in 2017. *Id.*

Mr. Muller also requests rates of $125.00 per hour for paralegal work performed in 2016, 2017, and 2018; $140.00 per hour for paralegal work performed in 2019; from $125.00 to $150.00 per hour for paralegal work performed in 2020; from $125.00 to $160.00 per hour for paralegal work performed in 2021; and from $125.00 to $160.00 per hour for paralegal work performed in 2022. *Id.*

This request is consistent with what I and other special masters have previously awarded Mr. Muller and Muller Brazil. *Brewster v. Sec'y of Health & Hum. Servs.*, No. 20-1604V, 2023 WL 120782, at *2 (Fed. Cl. Spec. Mstr. Jan. 6, 2023); *Hutchens v. Sec'y of Health & Hum. Servs.*, No. 17-797V, 2022 WL 17849962, at *2 (Fed. Cl. Spec. Mstr. Dec. 22, 2022); *Goodwin v. Sec'y of Health & Hum. Servs.*, No. 16-1676V, 2022 WL 6616738, at *4 (Fed. Cl. Spec. Mstr. Sept. 13, 2022); *Putman v. Sec'y of Health & Hum. Servs.*, No. 19-1921V, 2022 WL 2133979, at *2-3 (Fed. Cl. Spec. Mstr. May 12, 2022); *Karapetian v. Sec'y of Health & Hum. Servs.*, No. 19-546V, 2022 WL 1865083, at *2 (Fed. Cl. Spec. Mstr. May 9, 2022); *Engel v. Sec'y of Health & Hum. Servs.*, No 16-1145V, 2022 WL 1860201, at *2 (Fed. Cl. Spec. Mstr. May 6, 2022); *Plescia v. Sec'y of Health & Hum. Servs.*, No. 15-1472V, 2018 WL 6291870, at *2 (Fed. Cl. Spec. Mstr. Oct. 31, 2018). Accordingly, I find the requested rates are reasonable and that no adjustment is warranted.

### 2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed.

---

27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.

The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.

The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf

The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2021-PPI-OL.pdf

The 2022 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27-Forum-Rate-Fee-Schedule-2022-%28Final%29.pdf.

The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

### 3.  Clerical and Administrative Time

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The invoice for Muller Brazil includes several clerical and administrative tasks. Examples include (but are not limited to):

- August 2, 2016, 0.3 hours: "Burned CD with exhibits for mailing."
- March 17, 2021, 0.1 hours: "Phone call to provider re missing part 1 of 2 records request from Tullahoma Manchester Pediatrics, PLLC."
- December 30, 2021, 0.1 hours: "Draft email to court reporter re: zoom services."
- January 10, 2022, 0.1 hours: "Email to Dr. Steinman re: zoom link."

These administrative and clerical tasks in Muller Brazil's invoice total approximately 2.1 hours, resulting in $380.00 in charges. My colleagues and I have advised Petitioner's counsel before that attorneys' fees for clerical and administrative tasks are not reimbursable in the Program, and we have reduced their requested attorneys' fees accordingly. *See, e.g., Berkow v. Sec'y of*

*Health & Hum. Servs.*, No. 17-1587V, 2019 WL 2062111, at *2 (Fed. Cl. Spec. Mstr. Apr. 26, 2019) (reducing paralegal fees by 10% for billing clerical and administrative tasks); *Meadows v. Sec'y of Health & Hum. Servs.*, No. 16-861V, 2018 WL 6292565, at *2-3 (Fed. Cl. Spec. Mstr. Oct. 31, 2018) (reducing paralegal fees by 30% for billing clerical and administrative tasks). Accordingly, I find that a reduction in requested attorneys' fees of $380.00 is warranted.

Total attorneys' fees to be awarded: **$83,181.90.**

### D. Reasonable Costs

Petitioner requests a total of $36,726.25 in costs, which includes obtaining medical records, the Court's filing fee, experts fees for Dr. Steinman, and remote hearing facilities. Fees App. Ex. B.

Specifically, Petitioner requests $2,469.25 for medical records requests; $400.00 for the Court's filing fee; $31,625.00 for expert fees; and $2,232.00 for remote hearing facilities. Fees App. Ex. B. Documentation was provided for the medical record requests, the Court's filing fee, and the remote hearing facilities, and these will be paid in full.

#### 1. Petitioner's Expert Costs for Dr. Lawrence Steinman

Petitioner requests an hourly rate of $550.00 for 57.5 hours of expert work performed in 2017, 2019, 2020, and 2022, for a total of $31,625.00.

Dr. Steinman received his medical degree from Harvard University in 1973. Ex. 11.2 at 1. Since 2008, he has held the G.A. Zimmerman Chair as professor of neurological sciences, neurology, and pediatrics. *Id.* Dr. Steinman is board certified in neurology. *Id.* at 2. Dr. Steinman has provided a full accounting of the hours he expended preparing and writing three expert reports totaling 59 pages in length. Ex. 11, 12, 13.

Although my colleagues and I have denied Dr. Steinman's request for an hourly rate of $550.00 in the past, more recent decisions have granted him this rate. *Morrison v. Sec'y of Health and Hum. Servs.*, No. 18-386V, 2023 WL 1873254, at *7 (Fed. Cl. Spec. Mstr. Feb. 10, 2023) (granting $550.00 per hour for Dr. Steinman's work performed in 2021 and 2022); *Mason v. Sec'y of Health & Hum. Servs.*, 2022 WL 4693380, at *3 (Fed. Cl. Spec. Mstr. Sept. 8, 2022) (finding that Dr. Steinman's "demonstrated experience with the Vaccine Program has recently been deemed grounds for a slight rate increase" from $500.00 per hour to $550.00 per hour); *Anderson v. Sec'y of Health & Hum. Servs.*, No. 20-440V, 2022 WL 3151737, at *3 (Fed. Cl. Spec. Mstr. July 13, 2022) (finding that "Dr. Steinman's expertise in the medical field and long-standing participation in the Vaccine Program" justified an hourly rate of $550.00 even though this was higher than the $500.00 "informal cap on expert fees" in the Program).

However, I do not find that Dr. Steinman's rate increase should apply retroactively to 2017. There appears to have been some variation in the rate at which Dr. Steinman's work has been compensated. *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11-685V, 2021 WL 6211169, at *17 (Fed. Cl. Spec. Mstr. Dec. 8, 2021) (denying a proposed increase from $500.00 per hour to $550.00

per hour); *Sparrow v. Sec'y of Health & Hum. Servs.*, No. 18-295V, 2021 WL 5410424, at *4 (Fed. Cl. Spec. Mstr. Oct. 25, 2021) (finding that $550.00 per hour was reasonable for work Dr. Steinman performed in 2021 and that $500.00 per hour was reasonable for work he performed in 2019 and 2020); *Girardi v. Sec'y of Health & Hum. Servs.*, No. 17-181, 2020 WL 7868229, at *6 (Fed. Cl. Spec. Mstr. Dec. 7, 2020) (finding that $550.00 per hour was reasonable for Dr. Steinman's work in 2017, 2018, and 2019).

Accordingly, I find that Dr. Steinman's requested rate of $550.00 is consistent with what he has been awarded for work performed in 2022, and I will reduce his rate to $500.00 per hour for work performed in 2017, 2019, and 2020. I therefor reduce Dr. Steinman's costs by $1,950.00.

Total costs to be awarded: **$34,776.25.**

## III.      Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$117,958.15**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and her attorney, Mr. Maximillian Muller.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[4]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.